**Gabriel FLORES, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–01–00307–CR.**

Court of Appeals of Texas,
Eastland.

March 20, 2003.

Erika Copeland, Abilene, for appellant.

Britt Thurman, District Attorney, Anson, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

TERRY McCALL, Justice.

The jury convicted appellant of felony murder of a 13–month–old child and assessed his punishment at 40 years confinement. We affirm.

In his first and second issues on appeal, appellant argues that the trial court erred in denying his motion to quash the indictment. The indictment contained two counts which stated in part:

*Count One*

[Appellant] did then and there commit a felony, to-wit: injury to a child, and in the course of and furtherance of the commission, [appellant] committed an act clearly dangerous to human life that caused the death of an individual, to-wit: [the victim], an individual under six (6) years of age, by manner and means unknown to the Grand Jury.

*Count Two*

[Appellant] did then and there intentionally or knowingly cause serious bodily injury to [the victim], a person fourteen (14) years of age or younger, by manner and means unknown to the Grand Jury.

Appellant first argues that the trial court erred in overruling his motion to quash the indictment because the indictment failed to provide him with notice of the particular offense for which he was charged. See TEX. CODE CRIM. PRO. ANN. art. 27.08(1) (Vernon 1989). In his motion to quash the indictment, appellant complained that the indictment did not "set forth and allege any culpable mental state in any part of Count One."

Count One of the indictment tracked the felony murder statute. TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 2003) provides that a person commits the offense of murder if he:

[C]ommits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

The felony murder rule dispenses with the necessity of proving mens rea accompanying the homicide itself; the underlying felony supplies the culpable mental state. *Johnson v. State,* 4 S.W.3d 254, 255 (Tex. Cr.App.1999); *Ex parte Easter,* 615 S.W.2d 719, 721 (Tex.Cr.App.), *cert. den'd,* 454 U.S. 943, 102 S.Ct. 481, 70 L.Ed.2d 252 (1981); *Rodriquez v. State,* 548 S.W.2d 26, 28–29 (Tex.Cr.App.1977). A person commits the offense of injury to a child if he intentionally, knowingly, recklessly, or with criminal negligence causes: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury to a child. TEX PENAL CODE ANN. § 22.04(a) (Vernon 2003). While TEX. PENAL CODE ANN. § 22.04(e), (f), & (g) (Vernon 2003) provides that the range of punishment for injury to a child is determined by the mental state in which the offense was committed, the offense of felony murder under Section 19.02(b)(3) is a first degree felony regardless of the

culpable mental state for the underlying felony of injury to a child.

In general, an indictment must plead every element which must be proven at trial. *Dinkins v. State*, 894 S.W.2d 330, 338 (Tex.Cr.App.), *cert. den'd*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). An allegation of an essential culpable mental state is an element of the offense. *Dinkins v. State*, supra; *Thompson v. State*, 697 S.W.2d 413, 415 (Tex.Cr.App. 1985). Failure to include a culpable mental state usually is a defect of substance. *Studer v. State*, 799 S.W.2d 263 (Tex.Cr. App.1990); *Ex parte Winton*, 549 S.W.2d 751 (Tex.Cr.App.1977). Normally, when there is a defect in substance, there is a failure to charge a purported offense. See *Jackson v. State*, 718 S.W.2d 724, 725 n. 1 (Tex.Cr.App.1986).

An indictment for felony murder, however, is not fundamentally defective if it does not charge all of the elements of the object felony. It is sufficient if the indictment alleges the underlying felony committed (or attempted) and the culpable mental state attending the underlying felony committed or attempted. *Rodriquez v. State*, supra at 29; *Smith v. State*, 540 S.W.2d 693, 697 (Tex.Cr.App.1976), *cert. den'd*, 430 U.S. 922, 97 S.Ct. 1341, 51 L.Ed.2d 601 (1977). TEX. CODE CRIM. PRO. ANN. art. 21.13 (Vernon 1989) also appears to require that an indictment for felony murder include the culpable mental state for the underlying felony:

An indictment for an act done with intent to commit some other offense may charge in general terms the commission of such act with intent to commit such other offense.

The trial court erred in overruling appellant's motion to quash the indictment. Appellant's first issue on appeal is sustained because of the omission of the culpable mental state, although the indictment did not "[fail] to give [appellant] notice of the particular offense for which he was charged."

Although the trial court erred, *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Cr.App. 1997), admonished:

Except for certain federal constitutional errors labeled by the United States Supreme Court as "structural," no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis.

The court in *Yandell v. State*, 46 S.W.3d 357 (Tex.App.-Austin 2001, pet'n ref'd), held that failure of an indictment under Section 19.02(b)(3) to allege a culpable mental state for the underlying felony, if it was error, was an error of form that did not prejudice the defendant's substantial rights. The defendant in *Yandell* had engaged in deadly conduct, firing his weapon at a car in which the victim was sitting, and was convicted of murder under Section 19.02(b)(3). The defendant in *Yandell* moved to quash the felony murder indictment on the ground that it failed to allege that the defendant was "reckless" as to whether the vehicle was occupied. The trial court overruled his motion. On appeal, the court cited TEX. CODE CRIM. PRO. ANN. art. 21.19 (Vernon 1989) and then concluded that the omission of "reckless" in the indictment did not prejudice the substantial rights of the defendant.

We agree that, if the omission of a culpable mental state for the underlying felony was a matter of form, then Article 21.19 provides the test for harmless error. The question is whether the omission is one of substance or of form because the Code of Criminal Procedure categorizes errors in a charging instrument as either defects of substance or defects of form. TEX. CODE CRIM. PRO. ANN. art. 27.08 (Ver-

non 1989) provides that there is no exception to the substance of an indictment or information except for the four matters listed. In his motion to quash, appellant attempted to place Count One of his indictment within the first matter listed in Article 27.08:

1. That it does not appear therefrom that an offense against the law was committed by the defendant.

■ The defect was not one described by the quoted portion of Article 27.08. A written instrument is an indictment or information under the constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective. *Duron v. State,* 956 S.W.2d 547, 551 (Tex.Cr.App.1997). *Ex parte Easter, supra* and *Ex parte Bailey,* 600 S.W.2d 331 (Tex.Cr.App.1980), occurred before the Texas Constitution was amended in 1985 to provide that the presentment of an indictment or information invests the court with jurisdiction of the cause regardless of the number or nature of defects in the charging instrument (TEX. CONST. art. V, § 12(b)). These cases are instructive. Both involved an attempt to raise, by an application for writ of habeas corpus, a complaint that the indictment was fundamentally defective because the indictment for felony murder failed to allege a culpable mental state for the underlying felony of injury to a child. The indictments in both cases tracked the felony murder statute as did Count One in the indictment before us. Both cases held that the indictment was not fundamentally defective. The *Bailey* court stated:

The indictment sets forth all the elements of the statute. We have held, since *Standley v. State,* 517 S.W.2d 538 (Tex.Cr.App.1975), that only those indictments which fail to set forth an offense will be considered fundamentally defective and susceptible to challenge for the first time in a post-conviction writ of habeas corpus.

*Ex parte Bailey, supra* at 332.

In the present case, it cannot be said "[t]hat it does not appear [from Count One] that an offense against the law was committed by the defendant" as contemplated by Paragraph No. 1 of Article 27.08. Count One identified Section 19.02(b)(3) as the penal statute under which the State intended to prosecute appellant with sufficient "clarity and specificity." Based on the rationale of *Bailey* and *Easter,* we agree with the *Yandell* court's conclusion that the omission of a culpable mental state for the underlying felony is a defect of form; and, therefore, Article 21.19 provides the harmless error test for our review:

An indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant.

■ Under Article 21.19, determining whether the indictment's omission affected appellant's substantial rights turns on the question of whether appellant had notice adequate to prepare his defense. *Adams v. State,* 707 S.W.2d 900, 904 (Tex.Cr.App. 1986); *Yandell v. State, supra* at 362. The record reflects that appellant was fully aware of the crime for which he was accused. Count Two in the indictment charged appellant with intentionally or knowingly causing serious bodily injury to a child. The facts of the case were simple. The mother of the child left the sleeping child with appellant while she went to his parent's house to fix appellant a sandwich. She was gone only five to ten minutes. When she returned, the child had been battered so badly that death followed

shortly thereafter. Appellant was the only person with the child during those five to ten minutes. Thus, the indictment charged that appellant committed an act clearly dangerous to human life that caused the victim's death by manner and means unknown to the grand jury.

In his motion to quash the indictment, appellant did not contend that his defense was impaired by the wording of the indictment. Appellant makes no such contentions here. Appellant did not file a motion for new trial to develop a record of how appellant was harmed by the omission in the indictment. Appellant's defense was to simply let the State prove its case. It is difficult to imagine how appellant would have changed his defense even if a culpable mental state for the underlying felony had been alleged. We find that appellant's substantial rights were not prejudiced by the trial court's overruling the motion to quash.

Because *Bailey* and *Easter* held that the omission in a felony murder indictment of a culpable mental state for the underlying felony is not a fundamental defect, the trial court's error would still be subject to a harmless error review under TEX. R.APP.P. 44.2(b) even if it were considered to be a defect of substance. Rule 44.2(b) provides:

> Other errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

Thus, our analysis would be the same whether the standard of review is the one in Article 21.19 or the one in Rule 44.2(b).[1]

Appellant also contends that injury to a child is a lesser included offense of manslaughter and was, therefore, "statutorily prohibited from supporting the felony murder charge." In *Johnson v. State*, supra, the court held that injury to a child is not a lesser included offense of manslaughter. The court further stated that:

> We disavow our overly broad statement in *Garrett*[2] that in order to support a conviction under the felony murder provision, "[t]here must be a showing of felonious criminal conduct other than the assault causing the homicide."

*Johnson v. State*, supra at 258. Appellant's second issue on appeal is overruled.

In his third issue on appeal, appellant contends that the evidence is legally and factually insufficient to support his conviction. In order to determine if the evidence is legally sufficient, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State*, 17 S.W.3d 664 (Tex.Cr.App.2000). In order to determine if the evidence is factually sufficient, we review all of the evidence in a neutral light and determine whether the evidence supporting guilt is so weak as to render the conviction clearly wrong and manifestly unjust or whether the evidence supporting

---

1. We note that the court in *Sanchez v. State*, 32 S.W.3d 687 (Tex.App.-San Antonio 2000, pet'n granted), found that a defect of substance in an indictment is not subject to Article 21.19 and the rule in *Adams*. The *Sanchez* court indicated that a defect of substance in the indictment is not subject to a harm analysis. The court held, however, that the error in the indictment was harmful under

any harmless error analysis because the jury charge tracked the flawed indictment, thereby authorizing the jury to convict without a finding on all of the essential elements of the offense.

2. *Garrett v. State*, 573 S.W.2d 543 (Tex.Cr. App.1978).

guilt, although adequate when taken alone, is so greatly outweighed by the overwhelming weight of contrary evidence as to render the conviction clearly wrong and manifestly unjust. *Vasquez v. State,* 67 S.W.3d 229, 236 (Tex.Cr.App.2002); *Goodman v. State,* 66 S.W.3d 283 (Tex.Cr.App. 2001); *Cain v. State,* 958 S.W.2d 404 (Tex. Cr.App.1997); *Clewis v. State,* 922 S.W.2d 126 (Tex.Cr.App.1996). We review the fact finder's weighing of the evidence and cannot substitute our judgment for that of the fact finder. *Cain v. State,* supra; *Clewis v. State,* supra. Due deference must be given to the jury's determination, particularly concerning the weight and credibility of the evidence. *Johnson v. State,* 23 S.W.3d 1 (Tex.Cr.App.2000); *Jones v. State,* 944 S.W.2d 642 (Tex.Cr.App.1996), *cert. den'd,* 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). This court has the authority to disagree with the fact finder's determination "only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Johnson v. State,* supra at 9.

Marybel Cruz Herrera, the 13–month-old victim's mother, testified at trial that she started dating appellant in March of 2000. Herrera began living with appellant in August 2000 in a small house behind appellant's parents' house. Herrera moved out of the house on August 31, 2000, because appellant was drinking and "cussed" her out. Herrera also stated that, on August 31 while she was at work, appellant kept the victim. When she returned home from work, the victim had a bruise on her forehead. When Herrera asked him about the bruise, appellant said that he did not know how it had happened.

Herrera testified that around September 5, 2000, she began talking to appellant again and that she would sometimes stay with him at his house. Herrera stated that on September 15, 2000, she went to her parents' house and stayed until around 4:00 p.m. Herrera left the victim with her parents and returned to appellant's house. At that time, appellant started drinking with his brother and a friend. Around 9:15 p.m., Herrera and appellant went to Misty Barrientes' house. Herrera testified that appellant had been drinking from 4:00 p.m. until 9:15 p.m. Herrera wanted to drive to the Barrientes' house, but appellant would not let her. Appellant took beer with him to Barrientes' house.

Herrera said that her mother brought the victim to Barrientes' house around 11:00 p.m. Around 11:30 p.m., appellant, Herrera, and the victim left to go to appellant's house. Herrera stated that she believed appellant was intoxicated and that she did not want him to drive but that appellant would not allow her to drive. Appellant fell getting out of the car when they arrived at his house.

Herrera testified that, when they arrived at the house, she lay down with the victim until the victim fell asleep. Herrera then went back into the room with appellant for awhile, and then appellant asked her to go to the kitchen in his parent's house and make him a sandwich. Herrera said that she went to the kitchen and made appellant a sandwich. She was gone for approximately five minutes.

Herrera stated that, when she returned from making appellant a sandwich, the lights were off in the little house and that appellant met her at the door. Herrera gave appellant the sandwich, but he said that he did not want it because he was no longer hungry. Appellant told Herrera that the victim had woken up and was crying. Appellant said that the victim was fine, that he put her back to sleep, and that he did not want Herrera to turn on the light. Herrera testified that appellant stood in front of her and walked right next to her wherever she went. Herrera

looked for a flashlight because it was so dark in the house. After Herrera found the flashlight, appellant took the flashlight away from her.

Herrera testified that she then heard the victim "breathing with difficulty." Appellant got out of the way, and Herrera was able to go to the victim. Herrera said that she insisted that appellant turn on the light. Herrera saw blood coming out of the victim's mouth and a bruise on the victim's head. Herrera asked appellant what happened to the victim. Appellant responded that "he didn't know." Herrera asked appellant to get the keys to the car, but appellant said that he could not find them. Herrera went and woke up appellant's parents to take the victim to the hospital. Herrera said that she called her parents from the hospital. Herrera stated that appellant left the hospital when she told him her parents were coming and that the only time she saw appellant after that was in the courtroom.

Dr. Michael William Hart testified at trial that he received a call from the hospital on September 16, 2000, that there was a child with trauma, and that he needed to get there as quickly as possible. Dr. Hart said that, when he arrived at the hospital, the victim was in "severe distress." Dr. Hart testified that the victim "was obviously already having deformity from her injuries." The victim's head was swollen, she was bleeding from her ear, and she was not moving at all. Dr. Hart said that the victim's eyes were already fixed and dilated and that the covering of her eyes was drying. Dr. Hart stated that the victim's head looked as if it was deformed and that it was "very spongy and soft all on the right side." Dr. Hart testified that the victim did not respond to "noxious stimuli" and that she had no spontaneous breath sounds. The victim died approximately 40 minutes after being brought to the hospital.

Dr. Robert Edward Lyon, a forensic pathologist, testified that he performed an examination on the victim on September 16, 2000. Dr. Lyon said that the victim died as a result of blunt impact injuries to the head. Dr. Lyon identified six head injuries suffered by the victim, including skull fractures, tears of the brain, tears of the covering of the inside of the skull, hemorrhages of the retina and optic nerves, bruising of the scalp, and abrasions of the skin. Dr. Lyon testified that it takes a considerable amount of force to cause the head injuries present on the victim. Dr. Lyon indicated that the child would have to fall from a height of approximately two stories onto a hard surface to suffer the head injuries she exhibited. Dr. Lyon said that in his opinion the injuries were not caused by an accident.

Appellant specifically argues that the evidence is legally and factually insufficient to show that he committed an act clearly dangerous to human life that caused the death of the victim. When reviewing a case comprised wholly of circumstantial evidence, the standard of review is the same as it is for reviewing cases in which direct evidence exists. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Cr.App.1999); *King v. State*, 895 S.W.2d 701, 703 (Tex.Cr.App.1995); *Wilson v. State*, 863 S.W.2d 59, 65 (Tex.Cr.App. 1993). Circumstantial evidence, by itself, may be enough to support the jury's verdict. *Kutzner v. State*, supra; see also *Smith v. State*, 965 S.W.2d 509, 515 (Tex. Cr.App.1998). The record shows that appellant was alone with the victim at the time she suffered a severe injury to her head. Appellant tried to prevent Herrera from seeing the injuries to the victim. The victim died as a result of blunt impact injuries to the head. The jury heard testi-

mony that the injuries to the victim were not caused by an accident. The State called the foreman of the grand jury who testified that, after a "thorough investigation," the grand jury was unable to determine the means by which appellant caused the victim's death. See *Matson v. State*, 819 S.W.2d 839, 847 (Tex.Cr.App.1991). After reviewing all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. After reviewing all of the evidence in a neutral light favoring neither party, we hold that the jury's verdict is not so against the great weight of the evidence as to be clearly wrong and unjust. Appellant's third issue on appeal is overruled.

The judgment of the trial court is affirmed.