Opinion filed June 1, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed June 1, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-04-00021-CR 

                                                     __________

 

                              ROGELIO
MIRANDA BACA, Appellant

                                                             V.

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 161st District Court

                                                           Ector
County, Texas

                                                 Trial
Court Cause No. B-30,473

 



 

                                                                   O
P I N I O N

 

The jury convicted Rogelio Miranda Baca of
possession of heroin, found both enhancement allegations to be true, and
assessed his punishment at confinement for seventy-five years.  We affirm.

                                                                 Issues
Presented

Appellant presents two points of error for
appellate review.  First, he argues that
the evidence was Alegally
insufficient@ to show
that he knowingly possessed the heroin. 
Then, he argues that the trial court erred in refusing to Aprovide the identity of the State=s confidential informant@ and that this error violated his Sixth
Amendment Right to confrontation.

                                                              Standard
of Review








In order to determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307
(1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App. 2000).  The jury, as the finder of fact, is the sole
judge of the weight and credibility of the witnesses=
testimony.  Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 1981), art.
38.04 (Vernon 1979).  We review the
fact-finder=s
weighing of the evidence and cannot substitute our judgment for that of the
fact-finder.  Cain v. State, 958
S.W.2d 404 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126 (Tex.
Crim. App. 1996).  Due deference must be
given to the fact-finder=s
determination, particularly concerning the weight and credibility of the
evidence.  Johnson v. State, 23
S.W.3d 1 (Tex. Crim. App. 2000); Jones v. State, 944 S.W.2d 642 (Tex.
Crim. App. 1996).

 In cases
involving unlawful possession of a controlled substance, the State must prove
that the accused exercised care, control, or management over the substance and
that the accused knew that the substance was contraband. Poindexter v. State,
153 S.W.3d 402, 405 (Tex. Crim. App. 2005); Martin v. State, 753 S.W.2d
384, 387 (Tex. Crim. App. 1988).  When
the accused does not have exclusive possession of the place where the
contraband was recovered, the evidence must affirmatively link the accused to
the contraband.  Poindexter, 153
S.W.3d at 406; Brown v. State, 911 S.W.2d 744 (Tex. Crim. App. 1995); Pollan
v. State, 612 S.W.2d 594 (Tex. Crim. App. 1981). The link, however, need
not be so strong that it excludes every other reasonable hypothesis except the
defendant=s guilt,
and the evidence can be direct or circumstantial.  Brown, 911 S.W.2d  at 747-48.

                                                              Evidence
Presented

Odessa Police Officer Jesse Duarte testified that
he had been a police officer for approximately twenty years and was assigned to
the narcotics division.  Officer Duarte
said that he had known appellant Abetween
ten and twelve years,@
that he could recognize appellant on the street, and that appellant=s nickname was ARoy.@ 
Officer Duarte testified that he was involved in a nar-cotics
investigation involving appellant which began in November 2002 based upon
reports that appellant was distributing heroin in Odessa.








Appellant objected to Aany
hearsay,@ and
there was a discussion outside the presence of the jury.  The court instructed the jury that it could
not consider Officer Duarte=s  statement for the truth of the matter stated Athat appellant was distributing heroin
in Odessa@ but that
the jury could consider the statement Ato
show the reason for the officer taking the subsequent actions.@ 


Officer Duarte said that the police officers
conducted surveillance on the house where appellant lived and that he observed
known heroin addicts going to and from the house.  Appellant moved from that house to an
apartment, and the surveillance continued. 
Officer Duarte testified that he received information from an informant
on December 17, 2002, that the informant had been in appellant=s apartment and had seen a Alarge quantity of heroin.@ 
Based upon that information, Officer Duarte testified that they secured
a search warrant.  Appellant and his wife
were brought to the apartment while the search warrant was being executed.   

Officer Duarte testified that the dog which was
brought to the scene helped the police officers find heroin which was hidden
under the box springs of a bed in one of the bedrooms.  Officer Duarte identified the items which
they found when the search warrant was executed.  In addition to the heroin, there were some
plastic bags, some balloons, a single-edge razor blade, and several  photographs which were made at the time of
the search.  Officer Duarte also
testified that appellant had $611 in cash in his possession at the time of his
arrest for Aaggravated
possession of heroin,@
that the heroin weighed about sixty grams, that this would be more than two
ounces, and that the street value of heroin at that time was about $5,000 per
ounce.

During his cross-examination by appellant=s attorney, Officer Duarte testified
that he Awas
contacted by a confidential informant@
on December 17, 2002, and that he was not willing to give appellant=s lawyer the name of the confidential
informant because of security reasons. 
Officer Duarte said that this informant had already been threatened and
that he was still using the informant to conduct other heroin investigations.  

Dennis Hambrick, a chemist with the Texas
Department of Public Safety, testified that the exhibit which was sent to him
weighed 53.45 grams and that it contained heroin.

Odessa Police Officer Gregg Bowers testified that
he was a Anarcotics
detective,@ that he
was assisting other officers with a narcotics investigation, that he was one of
the officers who detained appellant and his wife, and that the officers brought
appellant and his wife back to their apartment. 
His testimony was consistent with the testimony of Officer Duarte, and
he also explained in more detail about how the dog assisted in locating the
contraband.








Odessa Police Officer Wayne Phillips also
participated in the search.  Officer
Phillips prepared the application for the search warrant and presented it to
the municipal court judge.  His testimony
was consistent with the testimony of Officers Duarte and Bowers.  He said that the SWAT [special weapon and
tactical] officers went into the apartment first, followed by the narcotics
officers and the canine officer and his dog. 
Officer Phillips took photographs of the scene.

Odessa Police Officer Andy Blackburn testified
that his canine partner, AFlappy,@ is a Belgian Malinois; that he and the
dog had Anarcotics
training and tactical training@;
and that the two of them participated in the execution of the search warrant at
appellant=s
apartment on December 17, 2002.  Officer
Blackburn identified the razor blade and the heroin which his dog found during
their search.  Officer Blackburn also
explained how the dog will Asit
down@ and look
at his handler when the dog finds something which has the smell of narcotics
and how the handler rewards the dog for his work.  Officer Blackburn also testified that Flappy
gave a positive response to the Abig
wad of money@ which
appellant had in his possession.  Officer
Blackburn said that Flappy found the heroin in the bottom of a mattress.  Flappy stuck his nose in a hole in the dust
cover on the bottom of the mattress, and the officers ripped it open and found
a big quantity of heroin in the mattress.

After the State rested, Angie Baca testified that
appellant was her father and that she attended Odessa High School in 2002.  Audelia Quinones  testified that she called appellant on his
cell phone on December 17 to tell him that AAngie=s boy friend [sic] had her car.@ Elva Baca, appellant=s wife, testified that, after they got
a call from Quinones, she and her husband went to Odessa High School to look
for their daughter.  The Odessa police
officers stopped them and took them back to their apartment.  Appellant=s
wife testified that she had had a substance abuse problem and that she was in a
methadone clinic program which includes psychological therapy.  Appellant=s
wife said that appellant was also involved in that program and that they are no
longer using heroin.








After the court made sure that he understood that
he had the right not to testify and that he would have to waive that right in
order to testify, appellant testified that everybody called him ARoy@
and that he had been to the penitentiary A[t]oo
many [times] to remember.@
Appellant stated that he had been to the penitentiary more than seven times
because he had been a heroin addict for twenty-seven years.  Appellant testified that he was Aclean now@;
that he was fifty-three years old at the time of trial; that he got out of
prison on parole on August 23, 2002; that he was going to AA meetings twice a week
and to a special program with a psychologist for an hour once a week; and that
he was taking methadone.  Appellant also
testified that Officer Duarte had harassed appellant and told appellant that he
would see that appellant spent the rest of his life in prison.  

Appellant testified that he did not know there was
any heroin in his apartment and that he had never been a heroin dealer.  During his cross-examination, appellant said
that somebody else must have put the heroin in his apartment because he did not
know it was there and that Officer Duarte was mistaken when he testified that
appellant told Officer Duarte that he was Afronted@ with the heroin.  Appellant also testified that he did not tell
Officer Duarte not to arrest appellant=s
wife because the heroin Ais
just mine.  It is not hers.  Take me.@

                                                        Sufficiency
of the Evidence

The evidence is legally sufficient to support the
jury=s finding
that appellant knowingly possessed the heroin which was found in his
apartment.  See, e.g., Flores v. State,
102 S.W.3d 328, 333-34 (Tex. App.CEastland
2003, pet. ref=d), and
the cases cited therein.  Point of Error
No. 1 is overruled.

                                                      Right
to Confrontation Claim

Appellant cites Crawford v. Washington, 541
U.S. 36 (2004), in support of his second point of error.  That case was decided after the trial of the
case which is now before us, and it is factually distinguishable and not
controlling.

In Crawford, the defendant was convicted of
stabbing a man who had allegedly raped the defendant=s
wife.  The police had interrogated both
the defendant and his wife, and both of them gave voluntary statements.  There were differences in the two
tape-recorded statements which were relevant to defendant=s claim that he stabbed the alleged
rapist in self-defense.  The State of
Washington has a statute which bars a spouse from testifying against the other
spouse without consent, and the wife did not testify during her husband=s trial.  The Washington trial court overruled a Ahearsay@
objection to the State=s
use of the wife=s
tape-recorded statement.  The state
supreme court relied upon Ohio v. Roberts, 448 U.S. 56 (1980), to affirm
the conviction.   The United States
Supreme Court granted an application for writ of certiorari, reversed the
conviction, and remanded the case for further proceedings.








Speaking for the Court, Justice Scalia said in Crawford,
541 U.S. at 68:[1]

Where nontestimonial hearsay is at issue, it is
wholly consistent with the Framers=
design to afford the States flexibility in their development of hearsay law . .
. . Where testimonial evidence is at issue, however, the Sixth Amendment
demands what the common law required: unavailability and a prior opportunity
for cross-examination.  We leave for
another day any effort to spell out a comprehensive definition of Atestimonial.@  Whatever else the term covers, it applies at
a minimum to prior testimony at a preliminary hearing, before a grand jury, or
at a former trial; and to police interrogations.  These are the modern practices with closest
kinship to the abuses at which the Confrontation Clause was directed.  (footnote omitted).

 

We hold that the report from the confidential
informant that appellant was distributing heroin in Odessa was Anontestimonial.@  There was no interrogation of the informant,
and the trial court did not err in overruling appellant=s
request for the name of the confidential informant.  Woods 
v. State, 152 W.W.3d 105, 113-14 (Tex. Crim. App. 2004);  Ford v. State, 179 S.W.3d 203, 208
(Tex. App.C Houston
[14th Dist.] 2005, pet. ref=d).

We note that the trial court instructed the jury
that it could not consider Officer Duarte=s
testimony about the report from the confidential informant for the truth of the
matter stated.  Point of Error No. 2 is
overruled.

                                                               This
Court=s Ruling

The judgment of the trial court is affirmed.

 

 

BOB DICKENSON

SENIOR JUSTICE

June 1, 2006

Do not publish.  See
Tex. R. App. P.  47.2(b).

Panel
consists of:  McCall, J., and

Strange,
J., and Dickenson, S.J.[2]











[1]Chief Justice Rehnquist, joined by Justice O=Connor, filed a separate opinion.  Crawford, 541 U.S. at 69.  They agreed that the conviction should be
reversed, but they dissented from the decision to overrule Ohio v. Roberts.





[2]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.