**Opinion filed March 30, 2018**



## In The

# Eleventh Court of Appeals

_____

## No. 11-16-00302-CR

_____

### DEDRA LYNN CRIDER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR23427**

### M E M O R A N D U M   O P I N I O N

The trial court found Appellant guilty of the first-degree felony offense of injury to a child[1] and assessed punishment at confinement for twenty years. On appeal, Appellant presents three issues. We affirm.

### I. *The Charged Offense*

The grand jury indicted Appellant for the offense of injury to a child. The grand jury alleged in its indictment that Appellant "intentionally or knowingly cause[d] serious bodily injury to [T.G.], a child of [fourteen] years of age or younger,

---

[1]TEX. PENAL CODE ANN. § 22.04 (West Supp. 2017).

by" shaking, throwing, or causing blunt force trauma. A person commits the offense of injury to a child if he intentionally or knowingly, by act or omission, causes serious bodily injury to a person of fourteen years of age or younger. PENAL § 22.04(a)(1), (c)(1).

## II. *Evidence at Trial*

T.G., the victim in this case, is Appellant's son. At trial, T.G. was described as "medically-fragile." He was born in March 2014 with "DiGeorge syndrome." He also had a congenital heart defect, which required heart surgery three days after he was born. Because of his heart surgery, T.G. did not live with his parents at their home in Brownwood until he was about three weeks old. T.G. was taken to the emergency room for breathing issues on two occasions: once on May 7, 2014, and once on August 21, 2014.

### A. *Emergency medical and fire services respond to distress call at Appellant's home.*

Upon arrival at Appellant's home on the morning of August 21, EMS observed T.G., Appellant, and a bystander outside the home. T.G., who was four and one-half months old at the time, lay on a bench, "unresponsive" and "pale," and his limbs were "flaccid off to the side." EMS transported T.G. to the emergency room at Brownwood Regional Hospital. EMS personnel administered oxygen to him en route to the hospital, and as a result, his respiratory rate increased and he became more responsive.

T.G. had suffered from a seizure and had stopped breathing at Appellant's home. A CT scan revealed that T.G. had a "mixed subdural hematoma" on the left side of his brain, which T.G.'s pediatrician described as "very large." The CT scan of T.G.'s brain also showed both "old" and "new" blood. The old blood suggested that a previous incident had caused bleeding, although doctors who testified at trial could not specify an exact date when the bleeding would have occurred. Because of

2

T.G.'s need for a higher level of care, he was airlifted by helicopter to University Hospital in San Antonio.

At University Hospital, an MRI revealed that blood had accumulated in T.G.'s spinal cord, although there was nothing on the vertebra to indicate direct injury. Medical personnel did not find any fractures on T.G.'s skull or any bruises on his body, except a small bruise on his foot.[2] T.G. also had no bumps, abrasions, or lacerations. An eye examination revealed that T.G. had numerous retinal hemorrhages in both eyes. During the two or three months that he was hospitalized in San Antonio, T.G. developed amblyopia[3] and began losing vision in one of his eyes, but it was successfully treated.

*B. Police interview Appellant about T.G.'s injuries.*

After T.G.'s injuries were discovered, investigators from Child Protective Services, the Department of Public Safety, and Brownwood Police Department interviewed Appellant about the August 21 incident. During the interviews, Appellant admitted that she was alone with T.G. that morning and that T.G.'s father, Bryan Gleason, woke up around 6:00 a.m. and went to work. Appellant also explained to two investigators that, the night before, T.G. had woken up several times crying.

Appellant explained that, on the morning of August 21, she attempted to give T.G. his medicine around 8:00 a.m., but when she tried to wake him up, T.G. would not respond. Appellant said that, when she tried to put the medicine in T.G.'s mouth, the medicine just "rolled out" or "drained out" of his mouth. Appellant explained that T.G.'s breathing was labored, that he was very stiff, and that his eyes were half-open and glazed over. Appellant said she panicked and called 9-1-1.

---

[2]Testimony indicated that the bruise on his foot was likely caused by an IV.

[3]Amblyopia is commonly referred to as "lazy eye."

3

To one investigator, Appellant gave conflicting statements. To another investigator, she had no explanation for what had happened. To other investigators, she said that, sometime prior to the incident, she had tripped over a cat and hit T.G.'s head on a door. Investigators who went to Appellant's home, however, saw no evidence of cats living there, but they did notice that Appellant had a dog. Appellant also said that T.G. could have been suffering from a seizure.

*C. The State alleged that T.G. suffered from "Abusive Head Trauma."[4]*

The State presented three experts at trial who opined that T.G.'s injuries were the result of "acceleration-deceleration force[s]" and "nonaccidental trauma." All three experts considered T.G.'s preexisting medical conditions when they formed their opinions.

Kathleen Buckley, the State's expert registered nurse, testified that T.G.'s injuries were non-accidental. First, Buckley testified that, at T.G.'s age, he would not have been ambulatory enough to self inflict a subdural hemorrhage because it takes "significant force to cause bleeding in the brain of a child who is not ambulatory." Second, Buckley testified that T.G. had no fractures and that no fractures combined with hemorrhaging in the brain in a small child raises a concern that there was a forceful "movement that caused the child's brain to move back and forth in the skull." Third, Buckley testified that no history was provided that explained T.G.'s hemorrhaging and that the absence of a history raises suspicions of inflicted injury. Fourth, Buckley testified that T.G. had "a lot of retinal hemorrhaging" and that, when retinal hemorrhaging is seen with brain hemorrhaging in a patient, it "really puts the concern for abuse of inflicted trauma much higher."

Dr. Scot Richard Morris, the State's expert medical doctor and pediatrician, testified that he was "[e]xtremely confident" T.G.'s injuries were caused by

---

[4]Such trauma is also known as "shaken baby syndrome," "nonaccidental head trauma," or "inflicted head trauma."

4

acceleration and deceleration forces, specifically by "violent shaking." Dr. Morris testified that there are three major findings of non-accidental head trauma: (1) retinal hemorrhages, (2) brain injury, and (3) subdural hemorrhages. If two of these findings are present, "it is very likely to be nonaccidental head trauma." Dr. Morris testified that a majority of the children that he has seen in the past fifteen years, with accidental head injuries, had a bump or an abrasion or even a laceration and that none of them had subdural hemorrhages, except for two victims of shaken baby syndrome.

Dr. Frank Scribbick III, the State's expert ophthalmologist, testified he was "pretty comfortable" stating that T.G.'s injuries were caused by non-accidental trauma. Dr. Scribbick testified that retinal hemorrhages are "very highly suggestive of nonaccidental trauma." Dr. Scribbick thought that the hemorrhaging in T.G.'s eyes was not consistent with just a simple accident because of the amount of hemorrhaging and the presence of large preretinal hemorrhages. According to Dr. Scribbick, in cases of children with accidental trauma, such as from a car accident or falling out of a tree, ninety-nine percent of the time there is no retinal hemorrhaging.

## III. *Analysis*

In her first and second issues, Appellant argues that the State's evidence was legally and factually insufficient to prove that Appellant committed the offense of injury to a child. Appellant argues in her third issue that the trial court abused its discretion by admitting unreliable expert testimony on abusive head trauma.

A. *Issues One & Two: The State adduced sufficient evidence to prove beyond a reasonable doubt that Appellant committed the offense of injury to a child.*

Appellant argues that the State's evidence is legally and factually insufficient to prove identity, i.e., that she was the person who committed the offense of injury to a child. Appellant admits that the State's evidence raises a suspicion that she

committed the offense, but she argues that the evidence leaves open the possibility that Gleason caused the injuries to T.G. before he left for work on the morning of August 21. We review a challenge to the sufficiency of the evidence, whether denominated as a legal or as a factual sufficiency claim, under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under this standard, we review all of the evidence in the light most favorable to the verdict and decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Brown v. State*, 381 S.W.3d 565, 573 (Tex. App.—Eastland 2012, no pet.) (citing *Jackson*, 443 U.S. at 314, 318 n.11, 320). As we explain below, we conclude that the trial court could have found beyond a reasonable doubt that Appellant committed the offense of injury to a child.

> *1. The factfinder could have concluded that Appellant inflicted T.G.'s injuries.*

Appellant told DPS Agent Jerry Lesikar that on the morning of August 21, Gleason woke up around 6:00 a.m. and went to work. Although the exact time that Gleason left was not established at trial, Gleason's boss testified that Gleason normally started work at 6:30 a.m. Appellant told investigators that she discovered T.G.'s symptoms around 8:00 a.m. when she tried to give T.G. his medicine. EMS arrived at Appellant's residence around 8:04 a.m. Upon arrival, EMS observed that T.G. was unresponsive, and on the drive to the hospital, T.G. exhibited seizure-like

symptoms. Dr. Morris testified that T.G. could have begun to manifest symptoms of a seizure "within an hour" of being shaken. Based on Dr. Morris's testimony, Appellant claims that Gleason could have shaken T.G. before he left for work. Appellant claims that, because T.G. exhibited symptoms by 8:00 a.m. and was in critical condition by 8:04 a.m., it was likely that T.G. exhibited symptoms before 8:00 a.m. Appellant claims that this leaves open the possibility that Gleason shook T.G. before Gleason left for work.

However, Dr. Morris also testified that T.G. could have manifested symptoms of a seizure "immediately" after being shaken. Buckley testified that, when a person suffers from a subdural hemorrhage, "your change in level of consciousness is immediate" and "at the time of the injury." Based on the State's timeline for T.G.'s injuries, which suggested T.G.'s injuries occurred between 7:00 a.m. and 8:00 a.m., the trial court could have concluded that T.G.'s injuries occurred at a time while T.G. was alone with Appellant and Gleason was at work. Evidence that a defendant was alone with a child when the injury occurred provides an inference that the defendant caused the injuries sustained. *See Nadal v. State*, 348 S.W.3d 304, 315 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Flores v. State*, 102 S.W.3d 328, 335–36 (Tex. App.—Eastland 2003, pet. ref'd). Therefore, the trial court could have reasonably found beyond a reasonable doubt that Appellant was the one who caused T.G.'s injuries. *Martin v. State*, 246 S.W.3d 246, 262 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (concluding expert testimony regarding the time frame of an infant's death was sufficient to establish identity of the perpetrator).

Additionally, other evidence supports the conclusion that Appellant was the perpetrator. In particular, EMS personnel who arrived at Appellant's home on the morning of August 21 noted how calm Appellant was; she appeared not "too concerned" about T.G., which was "really awkward." During the subsequent interviews, Appellant could not consistently describe the events that led to

T.G.'s injuries, and she gave different explanations for those injuries. For example, she mentioned tripping over a cat, but no one saw evidence of a cat in her home. Although the evidence provided by the State is circumstantial, circumstantial evidence can be used to establish the identity of the perpetrator of a criminal offense. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). This court does not "reevaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder." *Leroy v. State*, 512 S.W.3d 540, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). Because the trial court could have found beyond a reasonable doubt that Appellant, and not Gleason, was the perpetrator, we now review the evidence to determine if the trial court could have found beyond a reasonable doubt that Appellant intentionally or knowingly caused T.G. serious bodily injury.

### 2. *The factfinder could have concluded that Appellant intentionally or knowingly caused T.G. serious bodily injury.*

"'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." PENAL § 1.07(a)(46). Injury to a child is a result-oriented offense that requires a mental state that relates not to the specific conduct but to the result of that conduct. *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985). A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. PENAL § 6.03(a) (West 2011). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

The State's three experts at trial testified that T.G.'s injuries were the result of "acceleration-deceleration force[s]" and "nonaccidental trauma." Buckley and

Dr. Morris both testified that T.G.'s brain hemorrhaging was the type of injury that created a substantial risk of death to T.G. Intent of the accused "may . . . be inferred from the extent of the injuries." *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Dr. Morris testified that, to cause a subdural hemorrhage and severe retinal hemorrhaging, "you would need a high-velocity motor vehicle crash or a fall from three stories or more." Testimony from medical experts that "several slammings," "significant force," and a "great deal of force" were used to cause a child's injuries has been held to be sufficient evidence to prove intent to cause serious bodily injury. *Morales v. State*, 828 S.W.2d 261, 265 (Tex. App.—Amarillo 1992), *aff'd*, 853 S.W.2d 583 (Tex. Crim. App. 1993). Although Appellant told some investigators that she tripped over a cat and T.G.'s head hit a door, Dr. Scribbick testified that the retinal hemorrhaging he saw in T.G. would not be consistent with that story.

Moreover, Appellant was the only person caring for T.G. on May 7 when he was taken to the emergency room for breathing issues. Dr. Morris testified that no cranial imaging was done that day, but he agreed at trial that he would have conducted a CT scan on May 7 if he had known what was going to happen on August 21. Dr. Morris suspected that T.G. had an injury to his brain that was causing issues with his breathing on May 7. Buckley also testified that the presence of "old" blood in T.G.'s brain indicated that T.G. had suffered a prior injury to his brain. Buckley could not say definitely that the event causing the "old" blood occurred on May 7, but she agreed that translation forces were a "likely cause" because no history was provided for why T.G. was in the emergency room that day. In addition, Appellant told investigators that T.G.'s symptoms on May 7 were identical and "very similar in appearance" to his symptoms on August 21. Intent or knowledge may be inferred based on the occurrence of a previous similar injury. *See Morgan v. State*, 692 S.W.2d 877, 881–82 (Tex. Crim. App. 1985). The trial court could have reasonably

9

inferred that Appellant caused T.G.'s injuries on May 7 and knowingly repeated the harm to T.G. on August 21.

Viewing the evidence in the light most favorable to the verdict, we conclude that the trial court could have found beyond a reasonable doubt that Appellant intentionally or knowingly caused serious bodily harm to T.G. by shaking, throwing, or inflicting blunt force trauma. *See* PENAL § 22.04. Despite the circumstantial nature of the State's evidence, circumstantial evidence can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007); *see Martin*, 246 S.W.3d at 261 ("Direct evidence of the elements of the offense is not required." (citing *Hooper*, 214 S.W.3d at 14)). We overrule Appellant's first and second issues.

B. *Issue Three: Appellant failed to preserve error on her reliability objections to expert witness testimony on abusive head trauma.*

In her third issue, Appellant argues that the trial court abused its discretion when it allowed expert testimony on abusive head trauma. Appellant claims there is general disagreement and retraction in the medical community that a certain constellation of symptoms is caused exclusively by child abuse. She complains that the experts' diagnosis in this case was unreliable because it was based solely on a finding of subdural hematoma and retinal hemorrhaging, with no evidence of external injury. She further claims that the experts' diagnosis was unreliable in light of T.G.'s preexisting injuries. The State argues that Appellant has failed to preserve this issue for our review. We agree with the State.

To preserve an error for appellate review, a defendant must demonstrate that (1) she made a timely and specific request, objection, or motion and (2) the trial judge ruled on it. TEX. R. APP. P. 33.1; *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). With regard to experts, a party may object on three grounds: (1) qualification, (2) reliability, and (3) relevance. *Williams v. State*, 531 S.W.3d 902, 920 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Vela v. State*, 209

S.W.3d 128, 131 (Tex. Crim. App. 2006)). Qualification, reliability, and relevance "raise distinct questions and issues, and an objection based on one of these [grounds] does not preserve error as to another." *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see Vela*, 209 S.W.3d at 131 ("Qualification is distinct from reliability and relevance and, therefore, should be evaluated independently."). Appellant did not timely object to the reliability of abusive head trauma as a science or the reliability of the experts' opinions in light of T.G.'s preexisting injuries.[5] As a result, Appellant has not preserved her reliability complaint for appellate review.

### 1. Appellant objected to Kathleen Buckley's qualifications and the relevance of her opinion but not reliability.

Appellant asserted various objections during Buckley's direct examination, which, Appellant claims on appeal, raised the issue of reliability. Appellant first objected to Buckley's opinion when she testified that T.G.'s injuries were the result of acceleration and deceleration forces. Appellant's counsel objected on the grounds that "[h]er opinion is not relevant" and that "[t]here hasn't been enough testimony as to the predicate to show that she is an expert in this abusive head trauma." The first part of Appellant's objection—on the basis of "relevance"—is clearly an objection to the relevance of Buckley's opinion. *See* TEX. R. EVID. 401, 702. The second part of Appellant's objection challenged the predicate the State laid to establish Buckley as an expert on abusive head trauma. An objection based on an improper predicate must specify how the predicate is deficient. *Scherl v. State*, 7 S.W.3d 650, 652 (Tex. App.—Texarkana 1999, pet. ref'd). Here, Appellant's objection related to Buckley's qualifications as an expert on abusive head trauma. *See* TEX. R. EVID. 702 ("A witness who is qualified as an expert by knowledge, skill,

---

[5]No *Daubert* hearing was held in this case. *See Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993); *see also Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992).

experience, training, or education may testify in the form of an opinion or otherwise . . . .").

Next, Buckley testified about how the acceleration and deceleration forces she was describing go outside the normal care and handling of a child. The State asked what that force would look like, and Appellant objected that "she hasn't given any testimony to support that she has any knowledge of biomechanics that would have to do with forces inside or outside the human body that would cause this." Similar to Appellant's earlier objection, this was an objection to an improper predicate— that Buckley did not provide testimony that she had any "knowledge" of biomechanics. Because Appellant focused on Buckley's knowledge as the deficiency, it was a challenge to her qualifications. *See* TEX. R. EVID. 702.

As Buckley's direct examination further progressed, Buckley was about to give her opinion on whether T.G.'s injuries were the result of throwing, shaking, or blunt force trauma, but before she could, Appellant's counsel objected to her "being an expert on shaken baby syndrome because she has not presented that she has the knowledge of the science that counsel is trying to apply." Counsel continued: "Sure, she has experience, but that doesn't reach the *Daubert* trilogy or its progeny or *Kelly* as far as her expertise in this particular phenomenon, whether we call it abusive head trauma, inflicted head trauma, or SBS." We construe this as a qualification objection because it focused on Buckley's "knowledge" and "experience" as the basis for the objection. *See Vela*, 209 S.W.3d at 133 (qualification inquiry should consider "the 'fit' between the subject matter at issue and the expert's familiarity," and "the expert's background must be tailored to the specific area of expertise in which the expert desires to testify"). Additionally, the mere fact that Appellant objected on the basis of *Daubert* and *Kelly* was not specific enough to make the trial court aware that she was challenging the reliability of Buckley's opinion or the reliability of abusive head trauma. *Scherl*, 7 S.W.3d at 651–52 (holding that an objection that

12

"[t]here has been no showing of admissibility required by Rule 702 as required by *Kelly*, *Heartman* [sic], and *Dabner* [sic]" was a general objection). The relevance[6] and qualification objections above also are insufficient to preserve Appellant's reliability complaint on appeal. *See Shaw*, 329 S.W.3d at 656; *see also Nations v. State*, 944 S.W.2d 795, 799 (Tex. App.—Austin 1997, pet. ref'd).

>    2. *Appellant objected to Dr. Morris's opinion based on an improper predicate, his qualifications, and the relevance of his opinion.*

Appellant asserted numerous objections[7] during Dr. Morris's direct examination. Appellant first objected to Dr. Morris's opinion after he testified about the forces required to cause T.G.'s injuries. Appellant objected that "[t]here is no predicate laid to show that he has this knowledge as to the biophysics or anything as to . . . what the effect of a three-story fall would do to a child." Next, the attorney for the State questioned Dr. Morris on whether he thought that shaking, throwing, or causing blunt force trauma to T.G. could have caused his injuries, and Appellant objected on the basis that "[t]his is speculation" and "[t]here is no foundation to . . . support any answer to this question." Third, Appellant objected immediately after the State asked Dr. Morris what his opinion was on what caused T.G.'s injuries. Appellant's counsel stated, "I will object now, Judge, under 702" because "the witness hasn't provided the facts necessary to support the science that is supporting his opinion as to what caused the injury."

Appellant's first objection to Dr. Morris's opinion was one of improper predicate that focused on Dr. Morris's "knowledge" in biophysics as the basis for the objection, which was a complaint about qualifications, not reliability. *See* TEX. R. EVID. 702. An appellant's argument on appeal must comport with his objection

---

[6]Appellant asserted additional relevance objections, but none constituted a proper reliability challenge.

[7]Most of the objections constituted relevance objections, but none constituted a proper reliability challenge.

in the trial court. *Gibson v. State*, No. PD-1043-16, 2017 WL 5166629, at \*2 (Tex. Crim. App. Nov. 8, 2017). Because the objection at trial and the argument on appeal are not the same, Appellant failed to preserve this issue. *Id.*; *see* TEX. R. APP. P. 33.1.

In the second objection to Dr. Morris's opinion, Appellant complained about speculation and foundation. "In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). We note that an "expert opinion is unreliable if it is only 'subjective belief or unsupported speculation.'" *Dominguez v. State*, 474 S.W.3d 688, 693 (Tex. App.—Eastland 2013, no pet.) (quoting *Dauber*, 509 U.S. at 590). However, nothing from the context of Appellant's objection indicates that she made a reliability challenge to abusive head trauma or to Dr. Morris's opinion in light of T.G.'s preexisting injuries. Appellant's issue on appeal does not comport with her objection in the trial court. *See Dominguez*, 474 S.W.3d at 700 (holding that an objection based on "speculation" did not comport with a complaint on appeal regarding expert testimony); *see also Wolfe v. State*, 509 S.W.3d 325, 328 (Tex. Crim. App. 2017) (properly preserved reliability objection on abusive head trauma where counsel argued that "we are challenging the underlying principle as unreliable in the scientific community and not reliable in this case under *Daubert* and *Kelly*").

In Appellant's third objection to Dr. Morris's opinion, after the State asked Dr. Morris what his opinion was on what caused T.G.'s injuries, defense counsel stated, "I will object now, Judge, under 702" because "the witness hasn't provided the facts necessary to support the science that is supporting his opinion as to what caused the injury." Although Appellant's counsel objected on the basis of Rule 702, Rule 702 covers "numerous requirements and guidelines for the admission of expert testimony." *Gregory v. State*, 56 S.W.3d 164, 182 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd); *see Nickols v. State*, No. 11-11-00203-CR, 2013 WL 4715681,

at *4 (Tex. App.—Eastland Aug. 30, 2013, no pet.) (mem. op., not designated for publication) ("Rule 702 of the Texas Rules of Evidence governs the admissibility of expert testimony under three criteria: qualification, reliability, and relevance." (citing TEX. R. EVID. 702; *Vela*, 209 S.W.3d at 131)). Objections based simply on Rule 702, without more specificity, "are, in effect, general objections to an improper predicate" and "[a]n objection to an improper predicate that fails to inform the trial court exactly how the predicate is deficient will not preserve error." *Gregory*, 56 S.W.3d at 182. Here, Appellant did not specify how the predicate was deficient, and she failed to specify that the reason for a deficient predicate was reliability. Therefore, Appellant's objection was a general objection that failed to preserve her reliability complaint. *See Scherl*, 7 S.W.3d at 651–52; *see also* TEX. R. APP. P. 33.1.

### 3. Appellant objected to the relevance of Dr. Scribbick's opinion, not to its reliability.

During Dr. Scribbick's direct examination, the State asked Dr. Scribbick whether it was important for doctors to "look at the total picture of what happened to the child in making evaluations and determinations about whether or not there was nonaccidental trauma," to which Appellant's counsel objected. Appellant's counsel argued that "[t]his is not relevant," "[t]hey have no foundation set for him to testify as to what the Court should consider or not consider," and this "is within the providence of the Court." Defense counsel objected at trial to the relevance of Dr. Scribbick's opinion based on an improper predicate but did not object on reliability of any opinion. Appellant has failed to preserve her reliability complaint to Dr. Scribbick's opinion. *See Nations*, 944 S.W.2d at 799.

### 4. Appellant objected to expert witness testimony after the State rested its case, which was untimely under Rule 33.1.

After the State rested, Appellant's trial counsel made additional objections to the State's experts. Even if we construed these objections as challenges to reliability, the objections were untimely. *See* TEX. R. APP. P. 33.1. An objection is timely if it

is made "as soon as the [objecting party] knows or should know that an error has occurred." *Lackey v. State*, 364 S.W.3d 837, 843 (Tex. Crim. App. 2012) (quoting *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991)). Appellant was made aware of the substance of the experts' opinions and the underlying facts and data the State relied on when the experts testified during the State's case-in-chief. Appellant's trial counsel did not object at that time on the basis of reliability. Although the Court of Criminal Appeals has stated that "strict timeliness of a complaint may not be quite 'as crucial' in proceedings before a judge (as opposed to a jury)," *id.*, we still conclude that Appellant failed to timely object. *See* TEX. R. APP. P. 33.1. Accordingly, we overrule Appellant's third issue because it has not been preserved for our review.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


March 30, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[8]

---

[8]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.